# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LOUIS REYES, et al.,**

      **Plaintiffs,**

**-vs-**      Case No. 6:04-cv-1648-Orl-KRS

**FALLING STORES ENTERPRISES, INC.,**

      **Defendant.**

_____

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This cause came on for consideration following a bench trial on the issue of liquidated damages in this action for alleged violations of the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. Having carefully considered the testimony and evidence presented at trial, along with the documents filed by the parties, I make the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.

**A.**     **FINDINGS OF FACT.**

     1.     Defendant Falling Star Enterprises, Inc. (Falling Star) is a Florida corporation that operates a car audio electronics and sales installation business in Orlando, Florida. It was, at all times relevant to this case, a business engaged in commerce or in the production of goods for commerce as defined by the FLSA.

     2.     Plaintiff Louis Reyes, Jr. was employed by Falling Star from March 2002 to July 2004. The parties stipulate that Falling Star owes Reyes

$6,750.00 in unpaid overtime wages for overtime hours he worked while employed by Falling Star.

3. Plaintiff Dewayne K. McCauley was employed by Falling Star from September 2001 to June 2003. The parties stipulate that Falling Star owes McCauley $1,750.00 in unpaid overtime wages for overtime hours he worked while employed by Falling Star.

4. Plaintiff Shawn P. Hamel was employed by Falling Star from July 2002 to January 2004. The parties stipulate that Falling Star owes McCauley $5,000.00 in unpaid overtime wages for overtime hours he worked while employed by Falling Star.

5. Halah Baker Abed is the Secretary/Treasurer for Falling Star. During all relevant times, Abed was responsible for the administration of Falling Star's payroll.

6. Before January 2004, Abed did not have any training or experience with the minimum wage and overtime provisions of the FLSA.

7. In approximately 2002, Falling Star converted from a salary and commission based compensation system to payment of employees at an hourly rate.

8. During all relevant times, Falling Star hired a payroll company to determine the amounts to be withheld from employees' paychecks for payroll taxes and workers' compensation coverage and issue checks to Falling Star's employees. Each week, Abed called the payroll

company and reported the numbers of hours worked during the preceding week by each employee.

9. The payroll company computed the compensation due for work over forty hours a week as reimbursable at the employee's normal hourly rate, which Abed referred to as "straight time." The payroll company did not reflect the hours in excess of forty in its records. Rather, it categorized money paid to an employee for work in excess of forty hours per week as a bonus.

10. In July 2002, Abed consulted with Janet Waugh, a payroll manager at Falling Star's payroll company, to ensure that Falling Star's payroll practices were proper. Waugh told Abed that it was proper to pay the employee's regular hourly rate for work over forty hours per week and to categorize this work as a bonus.

11. In late 2003 or 2004, Abed again spoke with Waugh about the propriety of the method used to compensate employees for work in excess of forty hours per week. Waugh again assured Abed that the payment system being used was proper.

12. Sometime after July 2002 but before January 2004, Plaintiff Shawn Hamel asked his supervisor, Reggie Scott, about overtime pay. Scott told him that Falling Star paid only straight time. There is no evidence that Scott was an officer or manager of Falling Star or that he reported Hamel's inquiry to Abed.

13. Because rumors were circulating that employees of Falling Star had reported the company to the Department of Labor, Abed contacted the Department of Labor after speaking with Waugh for the second time. She learned that Falling Star was required to pay its employees one and one-half times their regular hourly rates for work in excess of forty hours per week.

14. After learning this information, Abed changed the method used by Falling Star to compensate its employees. Beginning in January 2004, Falling Star began paying its employees one and one-half times their regular hourly rates for work over forty hours per week.

15. After a Department of Labor investigation determined that Falling Star owed past-due overtime compensation to its employees, Falling Star issued checks in the amount of the past-due compensation as determined by the Department of Labor, but the checks were rejected by the plaintiffs.

16. In the answers to the plaintiffs' complaints, Falling Star asserted the affirmative defense that liquidated damages were not available to the plaintiffs because Falling Star's violation of the FLSA, if one occurred, was not willful.

**B.   CONCLUSIONS OF LAW.**

1. "Any employer who violates the provisions of section 206 or section 207 [of the FLSA] . . . [is] liable to the . . .employees . . . affected in the amount of . . . their unpaid overtime compensation . . . and in an

        additional equal amount as liquidated damages[,]" 29 U.S.C. § 216(b), unless "the employer shows to the satisfaction of the court that the act or omission . . . was in good faith and that [the employer] had reasonable grounds for believing that [the] act or omission was not a violation of the Fair Labor Standards Act. . . ."   29 U.S.C. § 260.

2. The good-faith exception set forth in 29 U.S.C. § 260 is an affirmative defense, on which the employer bears the burden of proof.  *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1191 n.18 (5th Cir. 1979); *Cusumano v. Maquipan Intern., Inc.*, 390 F. Supp. 2d 1216, 1218-23 (M.D. Fla. 2005).

3. Falling Star adequately raised the defense that liquidated damages were unavailable to the plaintiffs in its answers to the complaints. This was sufficient to put the plaintiffs on notice that Falling Star relied upon the good-faith defense set forth in 29 U.S.C. § 260 as an affirmative defense to the plaintiffs' claims for liquidated damages, even though Falling Star described its conduct as "not willful" rather than in "good faith."  *See* Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 48 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits").

4. "The determination of whether an employer acted in good faith and had reasonable grounds for believing that its act or omission

was not a violation of the FLSA has both subjective and objective components." *Kennedy v. Critical Intervention Servs., Inc.*, 199 F. Supp. 2d 1305, 1307 (M.D. Fla. 2002).

5. "To satisfy the subjective 'good faith' component, the employer has the burden of proving that it had an honest intention to ascertain what the Act requires and to act in accordance with it." *Dybach v. State of Fla. Dep't of Corrections,* 942 F.2d 1562, 1566 (11th Cir. 1991) (internal quotation marks and citations omitted).

6. Falling Star sustained its burden of demonstrating that it had an honest intention to ascertain what the FLSA required and to act in accordance with it. Abed had no experience or training regarding the FLSA during the time in question. She repeatedly asked the payroll company about its treatment of wages paid to employees for work in excess of forty hours a week, and she relied upon the advice she received from the payroll company. When Abed learned from the Department of Labor that Falling Star was required to pay employees one and one-half times their regular rate of pay for hours worked in excess of forty hours per week, Falling Star promptly conformed its practices to comply with the law and tendered past-due overtime compensation to the plaintiffs in the amount determined by the Department of Labor.

7. "Objective good faith means the employer had reasonable grounds for believing its conduct comported with the FLSA. . . . '[G]ood faith requires some duty to investigate potential liability under [the] FLSA.'"

       *Friedman v. South Florida Psychiatric Assocs.*, 139 Fed. Appx. 183, 185-86 (11th Cir. 2005)(quoting *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979), and citing *Dybach*, 942 F.2d at 1566)).

8. Falling Star sustained its burden of demonstrating that it had reasonable grounds for believing its failure to pay the plaintiffs overtime as required by the FLSA was lawful based upon Abed's reliance on the advice provided by the company Falling Star hired to handle its payroll.

9. Once an employer demonstrates to the Court that its failure to comply with the relevant provisions of the FLSA was in good faith and that it had reasonable grounds for believing its conduct comported with the FLSA, "the court may, in its sound discretion, award no liquidated damages . . . ." 29 U.S.C. § 260; *see also* 29 C.F.R. § 790.22.

10. Because the evidence established that Falling Star had both an objective and subjective good-faith belief that it was properly compensating its employees, I conclude that an award of liquidated damages is not warranted in this case.

11. "In this circuit a plaintiff may not recover prejudgment interest in a private FLSA action." *Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094, 1101 (11th Cir. 1987).

It is, therefore, **ORDERED** that the Clerk of Court shall do the following: (1) enter judgment in favor of Plaintiff Louis Reyes, Jr. and against Falling Star Enterprises, Inc. in the amount of $6,750.00 for unpaid overtime compensation under the FLSA; (2) enter judgment

in favor of Plaintiff Dewayne K. McCauley and against Falling Star Enterprises, Inc. in the amount of $1,750.00 for unpaid overtime compensation under the FLSA; and (3) enter judgment in favor of Plaintiff Shawn P. Hamel and against Falling Star Enterprises, Inc. in the amount of $5,000.00 for unpaid overtime compensation under the FLSA.

It is further **ORDERED** that the Clerk of Court is directed to close the file. Motions for attorneys' fees, supported by evidence, and a Bill of Costs may be filed and served within the time permitted by the rules of the Court.

**DONE** and **ORDERED** this 11th day of May, 2006.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record