# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LOUIS REYES, JR.,**

**Plaintiff,**

**-vs-**                                             **Case No.  6:04-cv-1648-Orl-KRS**

**FALLING STAR ENTERPRISES, INC.;**
**SADIAH BAKER; and NASER M. BAKER,**

**Defendants.**

_____

## ORDER

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' MOTION FOR TAXATION OF ATTORNEYS' FEES (Doc. No. 79)** |
| **FILED:** | **May 26, 2006** |

## I.    PROCEDURAL HISTORY.

The present action is composed of three cases that were consolidated on January 19, 2006. Doc. No. 54.  In the individual cases, Plaintiffs Louis Reyes, Jr., Dewayne K. McCauley, and Shawn P. Hamel separately filed complaints against Defendants Falling Star Enterprises, Inc. (Falling Star), Sadiah Baker, and Naser M. Baker for alleged violations of the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and against Falling Star for

unpaid wages under Florida state law.[1] Doc. No. 1 (hereinafter referred to as the *Reyes* case or

Reyes); *McCauley v. Falling Star Enterprises, Inc.*, 6:04-cv-01649-KRS, Doc. No. 1 (hereinafter

referred to as the *McCauley* case or McCauley); *Hamel v. Falling Star Enterprises, Inc.*, 6:05-cv-

00064-KRS, Doc. No. 1 (hereinafter referred to as the *Hamel* case or Hamel).

     Falling Star operated a car audio electronic and sales installation business, employing the

plaintiffs.  Doc. No. 74 ¶ 1.  In 2002, Falling Star converted from a salary and commission based

compensation system to paying employees at an hourly rate.  *Id.* ¶ 7.  At that time, it hired a payroll

company to issue checks to Falling Star employees.  *Id.* ¶¶ 7-8.  The payroll company informed

Falling Star that it did not have to pay its employees one and one-half times their regular hourly

rates for work in excess of forty hours.  *Id.* ¶ 8.  However, after contacting the Department of

Labor, Falling Star was informed that it was required to pay its employees this additional amount.

*Id.* ¶ 13.  Upon learning this information, Falling Star began paying its employees one and one-half

times their regular hourly rates for work over forty hours per week.  *Id.* ¶ 14.  Falling Star also

issued checks to its employees in the amount of past-due compensation as determined by a

Department of Labor investigation, but the checks were rejected by the plaintiffs.  *Id.* ¶ 15.

     After Reyes filed his complaint, the Court declined jurisdiction over his state law claim for

unpaid wages and dismissed a counterclaim filed by Falling Star for misappropriation of trade

secrets and tortious interference with advantageous business relations.  Doc. No. 21.  Falling Star

voluntarily dismissed similar counterclaims against McCauley and Hamel.  Doc. No. 57.  Hamel and

---

    [1]    Reyes and McCauley's complaints were filed on November 10, 2004, and Hamel's complaint was filed on January 11, 2005. Doc. No. 1; *McCauley*, 6:04-cv-01649-KRS, Doc. No. 1; *Hamel*, 6:05-cv-00064-KRS, Doc. No. 1.

McCauley abandoned their state law claims for unpaid wages before trial.  Doc. No. 37 at 5 (*Hamel* case); Doc. No. 35 at 5 (*McCauley* case).  Additionally, before trial, the parties stipulated that Defendants Sadiah Baker and Naser Baker would be dismissed with prejudice and that each party was to bear their own attorneys' fees and costs as to these defendants.  Doc. No. 64.

This action was set for a bench trial on March 20, 2006.  Doc. No. 62.  On the morning the trial was to begin, the parties stipulated that judgment be entered against Falling Star on the FLSA overtime claim.  Doc. No. 64.  Falling Star agreed to pay Reyes $6,750.00, McCauley $1,750.00, and Hamel $5,000.00.  *Id.*  Each of the plaintiffs stipulated that they received 100% of the overtime compensation due to them as a result of these payments.  Doc. No. 71.  The Court approved the joint stipulation on April 4, 2006.  Doc. No. 73.

A one-day trial was held solely on the issue of liquidated damages, after which the Court declined to award plaintiffs liquidated damages.  Doc. No. 74.  On May 12, 2006, judgment was entered against Falling Star in the stipulated amounts.  Doc. Nos. 75-77.

The plaintiffs timely filed the present motion for attorneys' fees, in which they seek $30,835.00 in legal fees.  Doc. No. 79.  In support of the motion, plaintiffs submitted the affidavit of Charles L. Scalise, Esq., plaintiffs' counsel in this matter, doc. no. 79-2, time sheets detailing hours worked by the plaintiffs' attorneys and support staff, doc. no.79-3, 79-4, 79-5, and the affidavit of N. James Turner, Esq., doc. no. 79-6.  Turner opines that the hourly rates and number of hours worked by plaintiffs' attorneys and paralegals were reasonable.

Falling Star responded to the motion.  Doc. No. 83.  In opposition to the motion, Falling

Star submitted a letter from Scott C. Adams, Esq., former counsel for plaintiffs, dated February 28,

2005.  *Id.* at 10.

## II.    STANDARD OF REVIEW.

### A.     *Attorneys' Fees.*

The FLSA provides for a mandatory award of attorneys' fees.  29 U.S.C. § 216(b).  In

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Supreme Court stated that "the most useful

starting point for determining the amount of a reasonable fee is the number of hours reasonably

expended on the litigation multiplied by a reasonable hourly rate."  This amount, which is

commonly referred to as the lodestar, is then adjusted to reflect the "results obtained."  *Id.* at 434;

*accord Norman v. Hous. Auth.*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988).

In determining the lodestar, a reasonable hourly rate is based on the prevailing market rate

in the relevant legal community for similar services by lawyers of reasonably comparable skills,

experience, and reputation.  *Gaines v. Dougherty County Bd. of Educ.*, 775 F.2d 1565, 1571 (11th

Cir. 1985).  Additional factors to be considered in determining a reasonable fee include: (1) the

time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform

the legal services properly; (4) preclusion of other employment; (5) the customary fee; (6) whether

the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the

amount involved and the results obtained; (9) the experience, reputation and ability of the

attorneys; (10) the undesirability of the case; (11) the nature and length of the professional

relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

"The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. . . . [S]atisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate." *Norman*, 836 F.2d at 1299 (internal citations omitted). It is well established that the Court may use its discretion and expertise to determine the appropriate hourly rate to be applied to an award of attorneys' fees. *See Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002).

The "'fee applicant bears the burden of . . . documenting the appropriate hours and hourly rates.'" *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1303). "[F]ee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. If the party submits inadequate documentation, the district court may reduce the amount of the award. *See id*.

Generally, a prevailing plaintiff may recover attorneys' fees incurred in establishing her entitlement to fees. *See Thompson v. Pharm. Corp. of Am., Inc.,* 334 F.3d 1242, 1245 (11th Cir. 2003) (awarding fees for litigating entitlement to fees under 42 U.S.C. § 1988); *see also Schwartz*

*v. High Q Seeds Corp.*, No. 05-60728-CIV, 2006 WL 1548385 (S.D. Fla. Mar. 13, 2006)

(applying *Thompson* in a case brought under the FLSA).

**III.   ANALYSIS.**

    *A.   Prevailing Party Status.*

    Because the FLSA provides for an award of attorneys' fees only to a prevailing plaintiff,

this is a threshold inquiry.  29 U.S.C. § 216(b).  Here, it is clear that the plaintiffs prevailed because

judgment was entered against Falling Star.

    *B.   Attorneys' Fees.*

    Scalise avers that the attorneys and paralegals in the firm worked 191.5 hours in litigating

the plaintiffs' complaints.  He attests that the hourly rates were $95.00 for paralegals, and $150.00

to $250.00 for attorneys.  Based on these rates, Scalise seeks $30,835.00 in attorneys' fees.  Doc.

No. 79-2.

    Falling Star objects to Scalise's request for attorneys' fees, stating that Scalise has sought

fees for non-legal and duplicative work.  It further asserts that the lodestar attorneys' fee should be

reduced because the plaintiffs' recovered damages were substantially less than the amount they

initially sought, and because plaintiffs' claim for attorneys' fees is disproportionate to the final

judgment.  Doc. No. 83.

    1.   <u>Reasonable Rate</u>.

    Scalise avers that he has practiced law in Florida continuously since 1988.  He has practiced

exclusively in the area of employment law for seven years and has over seventeen years of litigation

experience.  He seeks an hourly rate of $250.00.  Doc. No. 79-2 ¶ 4 (Scalise Aff.).  I find that this

hourly rate is reasonable, in the absence of objection, in light of his experience and the work he performed in this matter.

Scalise attests that Pantas has practiced law in Florida since 1993. Pantas has practiced extensively in the area of employment law since 2000 and has over eleven years of litigation experience. He seeks an hourly rate of $250.00. *Id.* ¶ 5. I find that his hourly rate is reasonable, in the absence of objection, in light of his experience and the work he performed in this matter.

Scott C. Adams has practiced law in Florida since 2002. He has practiced exclusively in the area of employment law for one year and has over two years of civil litigation experience. He seeks an hourly rate of $150.00. *Id.* ¶ 6. I find that his hourly rate is reasonable, in the absence of objection, in light of his experience and the work he performed in this matter.

Susan Sabra has been a paralegal since 1997. She has extensive experience in drafting complaints, discovery, motions, and affidavits. She seeks an hourly rate of $95.00. Scalise avers that state courts have found this rate reasonable for Sabra's work. *Id.* ¶ 7. I find that her hourly rate is reasonable, in the absence of objection, in light of her experience and the work she performed in this matter.

Jessica Fissette has been a paralegal since 1999. She has extensive experience in drafting complaints, discovery, motions, and affidavits. She seeks an hourly rate of $95.00. Scalise avers that state courts have found this rate reasonable for Fissette's work. *Id.* ¶ 8. I find that her hourly rate is reasonable, in the absence of objection, in light of her experience and the work she performed in this matter.

Judy Cane has been a paralegal since 1999. She has extensive experience in both state and federal court litigation, including drafting complaints, discovery, motions, and affidavits. She seeks an hourly rate of $95.00. Scalise avers that state courts have found this rate reasonable for Cane's work. *Id.* ¶ 9. I find that her hourly rate is reasonable, in the absence of objection, in light of her experience and the work she performed in this matter.

        2.    <u>Reasonable Number of Hours</u>.

The next issue is whether the number of hours worked are reasonable. Scalise submitted a time sheet describing the work performed by each of the individuals for whom fees are sought. Scalise's affidavit indicates that the following attorneys and paralegals performed the following hours of work: Scalise 43.5; Pantas 11.7; Adams 74.3; Sabra 13.0; Fissette 19.5; and Cane 29.5. Doc. No. 79-2 at 3.

The plaintiffs submitted a separate time sheet for each of the cases reflecting the time worked through the time that the cases were consolidated. Doc. No. 79-3 (*Reyes* case); Doc. No. 79-4 (*McCauley* case); Doc. No. 79-5 (*Hamel* case). After consolidation, all time was recorded in the *Reyes* case timesheet. In discussing Falling Star's objections to the time, I will refer to the time entries on each timesheet by referencing the plaintiff's name: e.g., a time entry reflected in the timesheet filed in the *Hamel* case will be listed as 0.1 (Hamel).

Falling Star objects that some of the hours worked by the individuals listed above are clerical, duplicative, or excessive. Doc. No. 83. Falling Star did not enumerate each entry to which it objected, instead giving examples in each category. While the better practice is to identify each objection with specificity, I will review the timesheets for clearly clerical, duplicative, or excessive

charges.  "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary."  *Barnes*, 168 F.3d at 428 (internal quotations omitted).  I will discuss these categories of objections in turn:

a.     **Clerical Work.**

Work that is purely clerical in nature, such as preparing notices of cancellation of depositions, contacting court reporters, mailing, filing, or otherwise delivering documents, and the like, are not compensable hours.  *See, e.g., Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1261 (M.D. Ala. 2000); *see also Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)("Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.").

The following time entries reflect purely clerical work that is not compensable:

| Sabra | 11/1/04 | File setup | 0.3 (Reyes) |
|-------|---------|-----------|-------------|
| Sabra | 11/22/04 | Setup of file | 0.4 (Hamel) |
| Sabra | 1/19/05 | Electronic filing[2] of plaintiff's motion to dismiss defendant's counterclaims | 0.1 (McCauley) |
| Sabra | 1/21/05 | Electronic filing of updated notice of pendency | 0.1 (McCauley) |
| Sabra | 1/21/05 | Electronic filing of notice of pendency and interested persons | 0.2 (Hamel) |

---

[2] While electronic filing requires use of a CM/ECF login and password assigned to an attorney, electronically submitting a document is the equivalent of having a runner deliver the document to the Court for filing.  While signing a document might reasonably be included in the work required by an attorney to prepare a document for filing, after the document has been delivered to staff for filing, counsel's work has been completed.  Accordingly, I conclude that a paralegal's work to electronically file a document is clerical work that is not compensable.

| Sabra | 2/1/05 | Electronic filing of case management report | 0.2 (Hamel) |
|---|---|---|---|
| Sabra | 2/1/05 | Electronic filing of case management report | 0.1 (McCauley) |
| Sabra | 2/11/05 | Electronic filing of plaintiff's motion to dismiss counterclaim | 0.1 (Hamel) |
| Fissette | 3/10/05 | Telephone call to Bolanovich, John w. – regarding finalizing mediation date | 0.2 (Hamel) |
| Fissette | 3/10/05 | Telephone call to Brown, James – spoke – spoke to Vanessa regarding mediation dates | 0.2 (Hamel) |
| Fissette | 3/15/05 | Electronic filing of notice of mediation | 0.2 (Hamel) |
| Fissette | 3/23/05 | Finalized[3] letter to Bolanovich and fax and mail the same | 0.2 (McCauley) |
| Fissette | 3/24/05 | Telephone call to Bolanovich – spoke to Chiqui from Mr. Bolonavich [sic] regarding depositions | 0.2 (Hamel) |
| Fissette | 4/8/05 | Prepare and file notice of appearance for Scott C. Adams | 0.3 (McCauley) |
| Fissette | 4/12/05 | Prepare and electronically file notice of appearance | 0.4 (Reyes) |
| Fissette | 4/12/05 | Electronic filing of memorandum of law in opposition to defendant's motion for leave to amend | 0.2 (Hamel) |
| Fissette | 5/6/05 | Telephone call to defense counsel – spoke to assistant regarding depositions | 0.2 (Reyes) |

---

[3]   To the extent that "finalized" was intended to indicate substantive work, this work is duplicative of the work performed by Fissette on March 22, 2005, drafting the letter.

| | | | |
|---|---|---|---|
| Fissette | 5/9/05 | Finalize[4], copy, fax and send interrogatories and requests for production to opposing counsel | 0.3 (Hamel) |
| Fissette | 5/9/05 | Finalize[5], copy, fax and send interrogatories and requests for production to opposing counsel | 0.2 (McCauley) |
| Fissette | 5/9/05 | Finalize, copy, fax and send interrogatories and requests for production to opposing counsel | 0.3 (Reyes) |
| Fissette | 5/13/05 | Telephone call to Bolanovich, John W. – left message to schedule depositions | 0.1 (Reyes) |
| Fissette | 6/7/05 | Telephone call to Bolanovich, John W. – re: dates for mediation | 0.2 (Hamel) |
| Fissette | 6/7/05 | Telephone call to Brown, James – re: mediation date | 0.2 (Hamel) |
| Fissette | 6/8/05 | Telephone call to Brown, James – left message – left message regarding mediation for Reyes | 0.1 (Reyes) |
| Fissette | 6/29/05 | Telephone call to Bolanovich, John W. – left message | 0.1 (Reyes) |
| Fissette | 7/6/05 | Telephone call to Bolanovich, John W. – spoke – arranged for deposition dates for corporate rep, Nasar [sic] and Haleh Baker individually | 0.2 (Hamel) |
| Fissette | 7/7/05 | Telephone call to Bolanovich, John W. - regarding meeting to inspect defendants documents | 0.1 (Hamel) |

[4]  To the extent that "finalize" is intended to indicate that Fissette did substantive work, this work was duplicative of the work performed by Attorney Adams on May 7, 2005, finalizing the discovery requests in the *McCauley* case.

[5]  To the extent that "finalize" is intended to indicate that Fissette did substantive work, this work was duplicative of the work performed by Attorney Adams on May 5, 2005, finalizing the discovery requests in the *Hamel* case.

| | | | |
|---|---|---|---|
| Fissette | 7/8/05 | Telephone call to Bolanovich, John W. – spoke – spoke to Chiqui and set up a time for SCA to review documents indicated in their request to produce | 0.2 (Reyes) |
| Adams | 7/14/05 | Finalize notice of deposition for Nasar [sic] Baker | 0.1 (Hamel) |
| Adams | 7/14/05 | Finalize notice of deposition for Halah Baker | 0.2 (Hamel) |
| Adams | 7/14/05 | Finalize notice of deposition for Nasar [sic] Baker and Halah Baker | 0.2 (Reyes) |
| Adams | 7/14/05 | Finalize notice of deposition of Nasar [sic] Baker | 0.1 (McCauley) |
| Adams | 7/14/05 | Finalize notice of deposition of Halah Baker | 0.1 (McCauley) |
| Fissette | 7/15/05 | Finalize and send out via facsimile and mail all notices of depositions | 0.4 (Reyes) |
| Fissette | 7/27/05 | Telephone call to Barbara Perry and company – regarding depositions | 0.1 (Reyes) |
| Fissette | 7/27/05 | Prepare notice of cancellation of deposition of Halah Baker (individually) | 0.2 (Hamel) |
| Fissette | 7/27/05 | Prepare notice of cancellation of deposition of Haleh Baker as corporate representative | 0.1 (Hamel) |
| Fissette | 7/27/05 | Prepare notice of cancellation of deposition of Halah Baker | 0.3 (Reyes) |
| Fissette | 7/27/05 | Prepare notice of cancellation of deposition of Halah Baker (individually) | 0.2 (McCauley) |
| Fissette | 7/27/05 | Prepare notice of cancellation of 30(b)(6) deposition | 0.2 (McCauley) |

| Fissette | 7/28/05 | Copy, fax and send out notices of cancellations of deposition of corporate representative and Halah Baker | 0.2 (Hamel) |
|----------|---------|------------------------------------------------------------------------------------------------------------|-------------|
| Fissette | 7/28/05 | Copy, fax and send out notices of cancellations of depositions of corporate representative and Halah Baker | 0.2 (Reyes) |
| Fissette | 7/28/05 | Copy, fax and send out notices of cancellations of deposition of corporate representative and Halah Baker | 0.2 (McCauley) |
| Fissette | 8/1/05 | Calendar dates from Case Management Order | 0.4 (Reyes) |
| Adams | 8/1/05 | Prepare fax cover sheet | 0.1 (McCauley) |
| Fissette | 8/12/05 | Finalize and send to opposing counsel supplemental initial disclosures | 0.3 (Reyes) |
| Fissette | 8/18/05 | Telephone call to Brown, James – left message | 0.1 (Reyes) |
| Fissette | 8/18/05 | Telephone call to Bolanovich, John W. – spoke – regarding mediation and Order to Show Cause | 0.1 (Reyes) |
| Fissette | 8/26/05 | Finalize and file motion for extension of time to complete mediation and file mediation report | 0.4 (Reyes) |
| Fisette | 8/31/05 | Electronic filing of notice of mediation | 0.2 (Reyes) |
| Sabra | 9/30/05 | Electronic filing of motion to withdraw Scott C. Adams | 0.2 (McCauley) |
| Sabra | 9/30/05 | Electronic filing of motion to withdraw | 0.1 (Hamel) |
| Sabra | 12/22/05 | Electronic filing of consent to exercise jurisdiction by US magistrate judge | 0.2 (Reyes) |

| Sabra | 12/22/05 | Electronic filing to stipulation to waive jury trial | 0.2 (Reyes) |
| Sabra | 12/22/05 | Electronic filing of consent to US magistrate and waiver of jury trial | 0.1 (Hamel) |
| Sabra | 12/27/05 | Electronic filing of joint pretrial statement and attachments | 0.2 (McCauley) |
| Sabra | 1/3/06 | Electronic filing of stipulation to waive jury trial and consent of non-jury trial and consent to exercise of jurisdiction by United States magistrate judge | 0.2 (McCauley) |
| Sabra | 1/27/06 | Preparation of notice of change of address | 0.3 (McCauley) |
| Sabra | 1/27/06 | Electronic filing of notice of change of address | 0.1 (McCauley) |
| Sabra | 1/27/06 | Electronic filing of motion for extension of time to file objections to defendants exhibits | 0.2 (Reyes) |
| Sabra | 1/31/06 | Preparation of notice of change of address and electronic filing of notice | 0.3 (Reyes) |

As a result, Fissette's work will be reduced by 7.7 hours, Sabra's work will be reduced by 3.6 hours, and Adams's work will be reduced by 0.8 hours.

The following entries group noncompensable clerical work with compensable substantive work:

| Sabra | 11/1/2004 | File setup; corporation record search and individual defendant record search | 0.5 (McCauley) |
| Scalise | 1/24/06 | Research and facsimile to defense counsel with attached research | 1.0 (Reyes) |

-14-

The grouping of a ministerial task with more substantive work makes it difficult to assess the reasonableness of the time spent on the task that would not be properly charged by an attorney. Accordingly, I will deduct 0.3 hours from Sabra's time for the ministerial task of setting up the file, and 0.1 hours from Scalise's time to account for the ministerial task of transmitting the research to opposing counsel.

Falling Star contends that the following entries also reflect purely clerical work:

| Adams | 2/17/05 | Prepare representation document | 0.8 (Reyes) |
| Adams | 2/23/05 | Finalize FOIA request | 0.2 (Hamel) |
| Adams | 2/28/05 | Telephone conference with Reyes – cell phone was out of order – called alternate number | 0.2 (Reyes) |

None of this time is technically clerical work. It is appropriate for an attorney to prepare a representation agreement, complete a Freedom of Information Act (FOIA) request, and converse with his client.

With respect to the preparation of the representation agreement in the present case, however, the time worked appears not to relate to the *Reyes* case. The complaint in that case was filed on November 10, 2004, long before the purported work preparing the representation agreement was performed. Accordingly, 0.8 hours of Adams's time is disallowed as not supported by the evidence in the record.

Recording time for placing an uncompleted call to Reyes reflects a lack of billing judgment on the part of the attorneys. Billing judgment requires that a party not seek reimbursement for hours that it "would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*." *Norman*, 836 F.2d at 1301. Calling an incorrect

-15-

telephone number is not a reasonable charge.  Accordingly, Adams's time will be reduced by 0.2 hours.

### b.    Duplicative.

Until the cases were consolidated for trial, counsel kept separate time records of work performed in each case.  Falling Star objects that the same task appears to be reflected on each of the timesheets and that, at times, the same work was performed by two professionals.  The work that appears to be duplicative is listed below, and each group of entries are numbered for ease of understanding the analysis.

| No. | Professional | Date | Description of Work | Time |
|---|---|---|---|---|
| 1 | Sabra | 1/25/05 | Preparation of case management report | 0.4 (Hamel) |
| | Sabra | 1/25/05 | Preparation of case management report | 0.4 (Reyes) |
| | Sabra | 1/26/05 | Preparation of case management report | 0.3 (McCauley) |
| | | | | |
| 2 | Adams | 2/22/05 | Telephone conference with defense attorney re: thirty day notice for civil theft claim | 0.2 (Hamel) |
| | Adams | 2/22/05 | Telephone conference with defense counsel re: civil theft letter and preparation of response to atty Bolanovich's correspondence re: civil theft | 0.5 (McCauley) |
| | | | | |
| 3 | Adams | 7/6/05 | Finalize third-party subpoena to Decision PEO | 0.2 (Hamel) |

|  | Adams | 7/6/05 | Finalize third-party subpoena to Decision PEO | 0.2 (Reyes) |
|---|---|---|---|---|
|  | Adams | 7/6/05 | Finalize third-party subpoena to Decision PEO | 0.2 (McCauley) |
|  |  |  |  |  |
| 4 | Fissette | 7/13/05 | Prepare notice of deposition of corporate representative and Baker | 0.2 (Hamel) |
|  | Fissette | 7/13/05 | Prepare notice of deposition of corporate representative and Sadiah Baker | 0.3 (Reyes) |
|  | Fissette | 7/13/05 | Prepare notice of corporate representative deposition | 0.2 (McCauley) |
|  | Fissette | 7/13/05 | Prepare notice of deposition for Sadiah Baker | 0.2 (McCauley) |
|  |  |  |  |  |
| 5 | Adams | 7/29/05 | Review documents provided by the defendant in response to the plaintiff 30(b)(6) duces tecum | 0.8 (Hamel) |
|  | Adams | 8/1/05 | Review documents provided by the defendant in response to the plaintiff 30(b)(6) duces tecum | 0.8 (Reyes) |
|  | Adams | 8/1/05 | Review documents provided by the defendant in response to the plaintiff 30(b)(6) duces tecum | 0.8 (McCauley) |
|  |  |  |  |  |
| 6 | Adams | 8/2/05 | Review additional documents provided by Precision PEO | 0.8 (Hamel) |
|  | Adams | 8/2/05 | Review additional documents provided by Precision PEO | 0.8 (Reyes) |
|  |  |  |  |  |
| 7 | Adams | 8/8/05 | Prepare for Nasar [sic] Baker's deposition | 0.2 (Hamel) |

| | Adams | 8/8/05 | Prepare for Nasar [sic] Baker's deposition | 0.6 (Reyes) |
|---|---|---|---|---|
| | Adams | 8/8/05 | Prepare for Nasar [sic] Baker's deposition | 0.6 (McCauley) |
| | | | | |
| 8 | Adams | 9/14/05 | Receive and review Nasar [sic] Baker's deposition | 1.0 (Reyes) |
| | Adams | 9/1/05 | Receive and review Nasar [sic] Baker's deposition transcript | 0.6 (McCauley) |
| | | | | |
| 9 | Scalise | 9/30/05 | Preparation of plaintiff's motion to withdraw Scott Adams | 0.2 (Hamel) |
| | Scalise | 9/30/05 | Preparation of plaintiff's motion to withdraw Scott Adams | 0.2 (Reyes) |
| | Scalise | 9/30/05 | Preparation of motion of withdraw Scott C. Adams | 0.2 (McCauley) |
| | | | | |
| 10 | Pantas | 12/16/05 | Meeting to prepare joint final pretrial statement and preparation of stipulation of waive jury trial and consent to non-jury trial | 0.2 (Hamel) |
| | Pantas | 12/16/05 | Attend pre-trial meeting here (O/C came and dropped off documents before appointment and left). Reviewed documents, called o/c to discuss issues | 0.2 (Reyes) |
| | Pantas | 12/16/05 | Meeting to prepare joint final pretrial statement and preparation of stipulation to waive jury trial and consent to non-jury trial | 0.2 (McCauley) |
| | | | | |

| 11 | Scalise | 1/19/06 | Preparation for final pretrial conference and attendance to final pretrial conference | 2.5 (Reyes) |
|---|---|---|---|---|
| | Scalise | 1/19/06 | Preparation for final pretrial conference and attendance to final pretrial conference | 2.5 (McCauley) |
| | Scalise | 1/19/05 | Preparation and attendance to final pretrial conference | 1.0 (Hamel) |

After review of the file, it appears that when performing a single task that would benefit all three cases, the full time necessary to complete the work was often billed to each of the three cases rather than divided among the cases.

For example, entry number 1 above relates to preparation of a standard Case Management Report (CMR). A CMR is filed in each of the cases. Except for the change in the caption, the CMRs in all three cases are substantially the same. They all relate to a single case management conference held between counsel on January 26, 2005, at 10:00 a.m. Doc. No. 18 (Reyes); Doc. No. 9 (Hamel); Doc. No. 18 (McCauley). A reasonable time to prepare all of these forms is 0.4 hours. Accordingly, Sabra's time for this work should be reduced by 0.7 hours.

Similarly, entry number 2 reflects that a telephone call with opposing counsel regarding a civil theft claim was charged to two files. Because one of the telephone call entries indicates that work was performed in addition to the telephone call, the entry that records only the telephone call is duplicative. Accordingly, Adams's time for this work will be reduced by 0.2 hours.

Entry numbers 3 through 7 relate to discovery that appears to have been taken once for use in all three cases, specifically the depositions of Naser Baker, Halah Baker, and a corporate representative of Falling Star and a subpoena to Decision PEO. Only one of these time entries will be allowed as to

-19-

each group of tasks; to the extent that the time entries differ, I conclude that the longest time entry recorded is reasonable.  Accordingly, Adams's time will be reduced by 4.2 hours and Fissette's time will be reduced by 0.6 hours.

Entry number 8 reflects review of a single deposition charged in two cases.  Only one of these time entries will be permitted.  Accordingly, Adams's time is reduced by 0.6 hours.

Entry number 9  pertains to preparing a single motion filed in each case.  Doc. No. 37 (Reyes); Doc. No. 27 (Hamel); Doc. No. 30 (McCauley).  Accordingly, only one of these time entries will be allowed as to each group of tasks.  Therefore, Scalise's time will be reduced by 0.4 hours.

Entry number 10 pertains to a single meeting between counsel, conducted in all three cases, to prepare the final pretrial statement.  The entry in the *Reyes* timesheet reflects that counsel did not actually meet, but merely conferred by telephone.  Accordingly, only one of these time entries will be allowed.  Therefore, Pantas's time will be reduced by 0.4 hours.

 Entry number 11 pertains to preparation for and attending the final pretrial conference in all three cases.  A single final pretrial conference was held on January 19, 2006.  The Court's minutes reflect that the conference lasted 35 minutes.  Giving counsel the benefit of the doubt that some time was expended in preparing for the conference, I find that only one of the 2.5 hour time entries is reasonable.  Accordingly, Scalise's time will be reduced by 3.5 hours.

Falling Star also contends that the following hours were spent performing work that was substantially similar in each of the cases:

| 1 | Adams | 2/22/05 | Prepare plaintiff first request for production and interrogatories to defendant | 1.8 (Hamel) |
|---|---|---|---|---|
| 2 | Adams | 5/5/05 | Finalize request to produce and interrogatories to defendant | 0.4 (Hamel) |
| 3 | Adams | 6/29/05 | Receive and review defendant's response to plaintiff's first set of interrogatories | 0.4 (Hamel) |
| | | | | |
| 4 | Adams | 4/18/05 | Receive and  review defendant's responses to initial interrogatories | 0.6 (Reyes) |
| 5 | Fissette | 4/20/05 | Preparation of draft second set of interrogatories | 1.0 (Reyes) |
| 6 | Adams | 4/26/05 | Prepare initial discovery | 0.5 (Reyes) |
| 7 | Fissette | 5/6/05 | Finalize initial discovery | 0.5 (Reyes) |
| 8 | Adams | 5/9/05 | Finalize request for production and finalize interrogatories | 0.4 (Reyes) |
| 9 | Adams | 6/29/05 | Receive and review defendant's responses to plaintiff's interrogatories and responses to request for production | 1.0 (Reyes) |
| | | | | |
| 10 | Adams | 3/9/05 | Prepare initial discovery - interrogatories and request for documents | 1.5 (McCauley) |
| 11 | Adams | 5/7/05 | Finalize changes to interrogatories to defendant | 0.2 (McCauley) |
| 12 | Adams | 6/29/05 | Receive and review defendant's response to plaintiff's request for production | 0.7 (McCauley) |
| 13 | Adams | 6/29/05 | Receive and review defendant's response to plaintiff's interrogatories | 0.4 (McCauley) |

Entry numbers 6 and 7 relate to preparation of initial discovery on April 26, 2005.  This work appears not to relate to the *Reyes* case, to which it was charged, because Adams reflected work reviewing *responses* to initial discovery in that case on April 18, 2005, more than a week earlier.  Therefore, Adams's time and Fissette's time will both be reduced by 0.5 hours because this work is not supported by the evidence in the record.

Similarly, entry numbers 12 and 13 are two entries for performing the same task, reviewing discovery responses, on the same date, which appear to be improper duplicate entries for performing a single task.  Therefore, Adams's time will be reduced by 0.4 hours, the time reflected in entry number 13.

With respect to the argument that the discovery was substantially the same in each case, the record is insufficient to support Falling Star's contention because the discovery requests and responses are not in the record.  Accordingly, the objections to the remaining entries in this category are overruled.

### 3.    Excessive.

Time worked in resolving mistakes of counsel are not properly billed to the client or opposing counsel under the billing judgment rule discussed above.  The following entries reflect time worked because counsel did not comply with the rules of the Court and was required to explain the deficiency in response to an order to show cause:

| Adams | 3/2/05 | Review Order to Show Cause | 0.2 (Reyes) |
| Adams | 3/4/05 | Preparation of response to Order to Show Cause and motion to file notice of mediation out of time | 0.4 (Reyes) |
| Adams | 3/4/05 | Prepare response to Order to Show Cause | 0.6 (Reyes) |

| Adams | 8/30/05 | Prepare response to Order to Show Cause | 0.3 (Reyes) |
| Adams | 4/25/05 | Prepare response to Court Order to Show Cause | 0.5 (McCauley) |
| Adams | 4/25/05 | Receive and review court Order to Show Cause re: answer aff. defenses | 0.3 (McCauley) |

Accordingly, Adams's time will be reduced by 2.3 hours to account for this noncompensable time.

   3.   Lodestar Attorneys' Fee Award.

Based on the foregoing analysis, I conclude that the lodestar attorneys' fee in this case is as follows:

| PROFESSIONAL | HOURLY RATE | COMPENSABLE HOURS WORKED | TOTAL |
|---|---|---|---|
| K.E. Pantas | $250.00 | 11.3 | $2,825.00 |
| Charles Scalise | $250.00 | 39.5 | $9,875.00 |
| Scott Adams | $150.00 | 64.3 | $9,645.00 |
| Susan Sabra | $95.00 | 8.4 | $798.00 |
| Jessica Fissette | $95.00 | 10.7 | $1,016.50 |
| Judy Cane | $95.00 | 29.5 | $2,802.50 |
| **GRAND TOTAL** | | | **$26,962.00** |

   4.   Lodestar Reduction.

Falling Star argues that the lodestar attorneys' fee should be reduced because the plaintiffs recovered damages in an amount far less than the amount they initially sought and because their claim for attorneys' fees is disproportionately higher than the final stipulated judgment.  Doc. No. 83 at 6-8.  A number of courts considering attorneys' fees in FLSA cases have reduced the lodestar attorneys' fees because of limited success in the litigation.  *See, e.g., Goss v. Killian Oaks House of*

*Learning*,  248 F. Supp. 2d 1162, 1168-69 (S.D. Fla. 2003); *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1326 (M.D. Fla. 2001); *Gary v. Health Care Services, Inc.*, 744 F. Supp. 277, 278-79 (M.D. Ga. 1990); *see also Carroll v. Wolpoff & Abramson*, 53 F.3d 626 (4th Cir. 1995).  In reducing attorneys' fees awards as unreasonable, these courts have focused on the eighth *Johnson* factor, the amount involved and the results obtained by the plaintiffs.  *Johnson*, 488 F.2d at 717-19.

In this case, Falling Star tendered the payment found to be due by the Department of Labor before litigation began.  While the amount of this compensation is not in the record, the record does establish that  plaintiffs rejected these checks and instead filed their complaints.

The record further reflects that plaintiffs' claims of actual damages far exceeded the amount they received in this case.  In the Joint Pre-Trial Statement in the *Reyes* case, Reyes asserted that he was entitled to $22,330.00 in unpaid overtime, while he ultimately received $6,750.00.  Similarly, in the Joint Pre-Trial Statement in the *McCauley* case, McCauley sought $39,600.00 in unpaid overtime, while he ultimately received $1,750.00.  And, in the Joint Pre-Trial Statement in the *Hamel* case, Hamel claimed that he was due $28,944.00 in overtime compensation, while he ultimately received $5,000.00.   Even if they had prevailed on the issue of an award of liquidated damages in the amount they recovered as past due overtime compensation, none of the plaintiffs would have received nearly the amount originally claimed.  Perhaps most importantly, plaintiffs stipulated that the amount they received in actual damages represented 100% of the overtime compensation to which they were entitled.  Thus, it is clear that the original claims far exceeded the amount of actual damages at issue in this case.

The outcome of this case raises the concern that the litigation was driven primarily by an intent to recover attorneys' fees, rather than a provable assertion that the plaintiffs were entitled to more overtime compensation than they were offered before the suit was filed. *Cf. Rodriguez v. Investco, LLC*, 305 F. Supp. 2d 1278 (M.D. Fla. 2004)(Court determined that Title III ADA lawsuits were driven by attorneys seeking fees rather than by plaintiff with a true desire to see public accommodations become more accessible). The following analysis of attorneys' fees, albeit in a different legal context, is applicable to this case:

> The key word here is *reasonable*. The Act was never intended to turn a lofty and salutary mission into a fee-generating mill for some lawyers to exploit the statutory scheme to see how many billable hours they could cram into a case before it is either tried or settled. They do a disservice to the disabled, and to the vast majority of lawyers who carry out their duties under the ADA with skill, dedication, and professionalism. This was a case of ordinary proportions and dimensions. It had no unusual features or unique characteristics. . . . That is, aside from attorney's fees, which thus provides an incentive for protracted litigation as opposed to pre-suit or post-suit early settlement.

*Brother v. Miami Hotel Investments, Ltd.*, 341 F. Supp. 2d 1230, 1233 (S.D. Fla. 2004).

In this case, no agreement was reached as to liquidated damages, and the issue was one reasonably in dispute. Furthermore, the case was complicated by Falling Star's original assertion of counterclaims, which were later abandoned. However, the inflation of the amount in controversy by plaintiffs and their counsel undoubtedly significantly contributed to the failure to resolve this case more quickly. Reyes recovered roughly 30% of his original claim for actual damages, exclusive of liquidated damages. McCauley recovered roughly 4% of his original claim for actual damages, exclusive of liquidated damages. Hamel recovered roughly 17% of his original claim for overtime compensation, exclusive of liquidated damages.

Under these circumstances, I conclude that a reasonable attorneys' fee is one that approximately equals the amount ultimately recovered for the clients.  Accordingly, I find that reduction in the lodestar attorneys' fees to $13,500.00, which is approximately a 50% reduction in the lodestar attorneys' fee, is appropriate in light of the limited success obtained in comparison to the damages originally sought.

**V.     CONCLUSION.**

Based on the foregoing reasons, plaintiffs' motion for attorneys' fees is **GRANTED in part and DENIED in part**.  It is **ORDERED** that Defendant Falling Star shall pay attorneys' fees to the plaintiffs in the amount of $13,500.00.

**DONE** and **ORDERED** in Orlando, Florida on October 12, 2006.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

-26-